I'd like to reserve three minutes for rebuttal. Okay. Your Honor, I'd like to go right to the primary issue raised in my brief, which is whether or not the district court relied correctly on the inevitable discovery doctrine to allow the introduction of the heroin at the trial. Will you trial counsel? I'm sorry? Will you trial counsel? No, Your Honor. I did not try this case. Okay. Go ahead. As the court is aware, the heroin was discovered in a cylinder with black tape on it in my client's suitcase, which was located in the trunk of the car that was being driven, and that was being driven by someone else and that was, in fact, owned by the driver. One of the officers performed what amounted to what the court ultimately found was an unconstitutional search, discovered the heroin. There was another officer on the scene with a canine unit. That officer instructed the officer who did the search to restore the heroin, the tube. Was he on the scene when the search of the interior of the car occurred? I thought he came afterward. He was there then? I believe he was there then, yes. I think he was there, and I think the first thing that was found was the heroin. And then when he discovered the tube, the other officer, this was Officer Drummond is the officer who discovered the tube in the suitcase. Officer Brown was the officer with the canine unit. He directed Officer Drummond to restore the tube to the suitcase. He then asked Officer Drummond to place the suitcase on the roadside. Officer Brown then ran the dog over the suitcase, and the dog alerted to the heroin. Based upon those facts, the district court concluded that the tube of heroin would have been discovered inevitably and could therefore be allowed regardless of the fact that Officer Drummond's search activity was blatantly unconstitutional. This court has held primarily, specifically in the Vasquez de Reyes case, that among other things, the decision to utilize the inevitable discovery doctrine has to be based upon historical facts capable of ready verification and not speculation. And I would submit- Wasn't one of the historical facts in this case the consent by the driver to search the car? Well, the district court concluded that the heroin was found in Mr. Carrion Soto's suitcase. I know that. My question is in terms of historical facts, was it a historical fact that the driver gave consent for the automobile to be searched? The driver gave consent for the car to be searched, but the court also found that Mr. Carrion Soto, the officer could not have reasonably concluded that Mr. Carrion Soto consented to a search of his suitcase. Right. I'm not really asking about the car, but in terms of inevitable discovery, if the search, consensual search of the car resulted in the discovery of cocaine under the seat, would it not be logical to conclude that that would trigger further inquiry and further search? It's logical to conclude, but I would submit that it's somewhat speculative. The district court felt that once the officers found the cocaine under the seat, they would have searched the rest of the car. It was inevitable that they would go ahead and search the rest of the car to see if there was additional contraband. At the impound lot, right? No, on the roadside. On the roadside? That troubles me. When you find a kilo of cocaine in a car, I thought standard operating procedures, that thing gets taken to the impound lot and then they break that thing down into a million pieces and look for as much as they can find. Is that not what they do? That's not what happened in this case. I understand that, but we're talking in the abstract about independent discovery. Is it not the case that when an officer finds a kilo of cocaine under the seat of a car, that that car gets towed to a police lot and then in their own sweet time, they go through every inch of that car, or are you arguing that they then stand by the roadside and they bring in all the people and they break the car down on the side of the highway? Your Honor, I understand Your Honor's question. This was done by officers in South Carolina. Maybe this is how they do things down there. My experience has been that, yes, when they find a substantial quantity of drugs in a car, the car gets taken to an impound lot and is searched more thoroughly there. And a passenger doesn't have the right to say, hey, that suitcase is mine, search everything else, but I've got to go? Yes, that's right, I'm late. You don't have the right to do that, correct? I don't believe so, no. So conceivably the inventory search would have disclosed the heroin, correct? It's a possibility, but I don't think that, I think to some extent, it's still somewhat speculative to assume, as the district court did, that the officers would have followed procedure, would have availed themselves of every opportunity to search this car right then and there, and they would have inevitably discovered the heroin. He did base it on, I guess, that they would have, once they found the cocaine, they would have called in T's, I guess his name, or Trees, the dog. Trees was the dog. And at that point they would have done the same luggage lineup. I never heard of that before. Luggage lineup that they did, in this case anyhow, that would have been done in a different sequence, but it would nevertheless inevitably have been done, and I guess he based that on Brian's testimony. But the sequence is key. The sequence is crucial to understanding what happened here, because the officer testified that usually they do things in a different order. Usually they run the dog around the entire car. Here the dog came in later, and it's obvious that the reason they used the dog was because they knew they had a problem with the heroin. Right. But if Brown, and clearly there was a real problem with the credibility of Drummond and the officers who talked about the consent. Absolutely. Of the englishman's consent. But there wasn't, that I could see, any problem with the credibility of, I think his name was Brown, the handler of the dog. And if the dog's handler said, well, usually what we would do in a case like this is, once the drugs are found, I come in with T's, and T's would do a luggage lineup, and T sniffs the car, and if he alerts at that point in time, then we arrest. He sniffs the car. But here, Officer Brown, I think what Officer Brown did really calls his credibility into question. But that's not for us to decide, because it does look like the district court believed Brown. I would question that finding by the district court. Officer Brown knew that the heroin was the product, the discovery of the heroin came from a blatantly unconstitutional search. He knew there was a problem here. He took things completely out of sequence. He adopted his own procedure, as Your Honor just stated. You never heard of this thing called the luggage lineup. He knew he had a problem. He was trying to salvage the heroin. They poisoned the well. They poisoned the well with the illegal search, and it's pretty easy to find something you already know is there. Exactly. And they used the dog to do that. And it's all things sort of a charade, right? But did Guzman give consent to search the interior of the car before or after the illegal search? Let's assume it was illegal. My recollection of the record is that she gave the search before. So why do we even get into the luggage? Let's assume that we agree with you that that was just blatantly unconstitutional, illegal. Don't you have to persuade us that either her consent was invalid or her consent would not have led to the cocaine being found under the seat or the car would not have been subjected to an inventory search after the kilo was found under the seat? Don't you have to disabuse us of one of those three things in order to win? Well, I think it's pretty clear that the car wouldn't have been subject to an inventory search because the officers thoroughly searched it right then and there on the roadside. They weren't interested in following procedure. They were interested in doing what they did. And the suitcase, I think it's pretty clear, was my client's suitcase. Remember, the officer removed the suitcases from the trunk, held them up. Who owns which one? My client identified the blue suitcase as his suitcase. And it was, as the district court found, the record did not bear out the fact that my client gave permission, he gave consent to search his suitcase even if it was located in the trunk of the car. And that was why the district court said that the officers could not reasonably conclude that there was any consent to search the suitcase. However, the district court admitted the heroin anyway under the inevitable discovery doctrine. Was the district court allowed to take into consideration the fact that there was this money in the glove compartment, neatly wrapped, as well as the fact that the two occupants had diverse explanations as to how they met and what they were doing? The district court could take those things into account as somewhat troublesome. But the fact of the matter is there's nothing illegal about possessing money. But would it not be a historical fact? It would be a historical fact. But I think what Vasquez de Reyes is getting at is you have to look at the entire record. And primarily what the district court has to rely on here is the credibility of the officers. And I think the credibility of the officers between Drummond's testimony, which the district court clearly discredited, at least on the consent issue, and then what Brown did in terms of introducing the dog and trying to salvage the search, I think the officers' credibility here was highly questionable. I think, you know, Drummond, the district court just completely discredited. The district court could not believe in any way, shape, or form that there was any consent to do the search. What Brown did, quite frankly, with the dog can only be described as slick. But... The problem with the camera failing, too? Well, that also, you know, it's very interesting that Your Honor brings that up. They both consented, but there was no record of the consent on the camera. Why? Because the consent happened to be within the 20- to 25-minute gap on the tape. That's very convenient. The district court found that wasn't problematic. I was quite honestly surprised by that. Do we have to be somewhat deferential of that factual finding, don't we? I understand that you have to be deferential. That is absolutely correct. But I would ask the court to consider that not only was there this 20- to 25-minute gap, there was testimony about the fact that the sound quality on the tape was poor. Therefore, it was impossible to hear the entire conversation between the parties. One of the tapes that was ultimately discovered was missing. As Your Honor will recall, the tape that was played at the suppression hearing was really a composite made of three other tapes. And one of the tapes that ultimately was copied into that single tape that was played at the hearing went missing sometime after the suppression hearing but before the trial. And that fact wasn't revealed, I think, until the trial. There are a lot of issues surrounding the tapes. It's not just that 20- to 25-minute gap. I understand the court is relying on it. But if you're looking for historical facts capable of ready verification and not speculation, I don't think you're going to find that in these tapes. The tapes, I think, create a lot of problems. And the district court really, to my mind, and I would respectfully submit with all due respect to Judge Simandl, really didn't question the tapes to the extent that they should have been questioned. And there were other issues as well. The reports that were prepared by the officers, there was some testimony concerning their reports. The reports were apparently incomplete. The officers also testified. But they didn't mention his consent. I'm sorry? They didn't. That really surprised me. That the consent issue was not mentioned in the reports. And the consent issue was really central to what happened here. If you're going to put something, you know, we've all heard the testimony. The officers only put the essential parts of what happened in their reports. We've all heard that 1,000 times. But one of the most essential things that happened here on the roadside was the fact that they consented to the car, to the search of the car, yet that did not make it into the reports. There's also the fact that the officers both testified that they couldn't recall key elements of what happened in their exchange with either Guzman or my client. So the officers' testimony was subject to question on many, many levels. There's the problematic nature of the canine search. All the way around, I don't see how the court could rely on inevitable discovery on this record to allow the heroin to be used at trial. Are you using some time, I think? Yes, I did. Three minutes. Okay. Thank you very much. Thank you. May it please the Court, I'm Assistant United States Attorney Stephen G. Sanders on behalf of the United States, the appellee in this matter. Mr. Sanders, where is the testimony that would support the finding of inevitable discovery? Is it Brown's testimony in the way he said, I think that's his name, what he said would normally happen? It's not with respect to the dog. I'd like to press the argument that I pressed in my brief, and I didn't cite or quote this particular statement from my supplemental appendix, but let me read it here because I think this cinches it. And this has to do with the search of the vehicle that was already underway, searching pursuant to Guzman's consent, right? And the fact that they would have found the cocaine pursuant to that lawful consent, which wasn't challenged below, and it was mildly challenged on appeal. And this is what Brown said. He was asked on cross-examination by trial counsel, when you opened up the trunk, or when they opened the trunk and held the suitcases, you had no reason to suspect that there was anything in that suitcase. And he says, no, we were just searching the whole vehicle and its contents. That's what Sergeant Brown says. So that certainly supports, and I think we're under clear... But that hurts you because if Guzman doesn't have the right to consent to the search of the client's suitcase, how in the world is the fact that they're going to then engage in an illegal search beyond the scope of the consent lead to inevitable discovery? No, because what he's saying there, we were just searching the whole vehicle and its contents. So it's not as if they were only going to search... That gets you the cocaine. Exactly. So once you credit, and Judge Simandl made this finding, and we're under a clearly erroneous standard of review here. So the question is, is there any evidence in the record to support the finding, number one, that there was a valid consent that... That's not my question. My question is, assume that there's a valid consent from Guzman. They go into the interior of the car pursuant to that consent, and they find the cocaine. Exactly. What testimony is there from someone other than Drummond about what their procedure would require them to do in that situation? They found some cocaine in the car. Under that situation, what do they do? Well, at the time, I don't know that there's testimony about procedures. But there's no testimony in the world of hurt. But we have in the record what they did, and that's the best evidence. No, you're saying the best evidence of what they did, of the inevitable discovery, is what they did in this case? So if what they did in this case, I'm not saying it does, but if it transcends the Fourth Amendment, well, that's okay because it gets in under the inevitable discovery rule because that's what they did. I think, Your Honor, I may, let me restate it. In other words, the question is, once they found the cocaine, would they have continued searching the car and inevitably have discovered the heroin? And if so, would that have been lawful? And the answer to both of those questions is yes because we know when they searched the suitcase first, they didn't stop there and say, that's it. I gather from your answer to this question that there's nothing on this record to set out their standard operating procedure, their usual way of conducting a search when they go to search a car where they have reason to believe that there are drugs, and if they find the drugs in that car, what do they do after finding the drugs? There's no testimony about impounding the car, which really surprised me because it seems like this is a slam dunk, it's an inventory search. There's nothing on the record about an inventory search. No, there isn't, and that was raised after the evidence closed, and I think Judge Simandl said, you know, I don't want you to submit an affidavit at this point regarding what the inventory procedures are. I agree that's one way and that's one sure way, but testimony about how searches are done would go way beyond the preponderance standard required to prove an edible discovery. That's belts and suspenders. Okay, and help me with that. Then what is the testimony about not how these guys conducted the search, but the testimony about how searches are conducted as a matter of course? What is that testimony? They don't have testimony about their procedure. I think there's a brief allusion. Did you try the case? I did not try the case, but I'm happy to defend this conviction, and let me explain why. I wouldn't get too giddy over it. I'm not giddy, but I'm happy. All right. You don't want to see me giddy. No. Okay. I stand corrected. I'll take your word for that. Okay. With any luck, I'll never have that opportunity. But Judge Hardiman was on the Stabile panel, and I mean in that case, right, the government relied on what actually happened in the case as proof of what inevitably would have happened. In other words, you had – let's assume there was an unlawful search, and most of my adversary's argument is premised on the fact that there's an unlawful search. Well, that's what the district court found. That's why we're here. But that doesn't mean it somehow makes the inevitable discovery conclusion more or less probable. The next step is to determine whether you apply the exclusionary rule. And if you're right about that, that means that wherever there's an illegal search that is very, very thorough, that whatever is uncovered will come in under the inevitable discovery rule, even if there's no testimony about normal procedure or impounding the car or impoundment allows inventory searches, because the court can just look to what the officers did in this case and glean from that what the police procedure is. That's what you're arguing. And that's exactly what Munoz says. I cited the Eighth Circuit case in my brief, and I should have blown it out a little more, but I'll do it here. That's almost on all fours, and the only difference in that case is that the illegally searched bag is in the interior of the car as opposed to in the trunk. But in that case, the officers get the consent from the driver, not from the passenger, right? So the officer goes, and there's one there. He searches the interior of the car, and he goes right to the knapsack that's on the passenger seat, which I think has some identification in it showing that it belongs to the passenger, not to the person who got the consent. And he opens that bag, and what does he find? He finds a methamphetamine, a scale, and a handgun. He then continues his search, and on the console he sees pipes, or I think for smoking meth, or I forget what it was. But the conclusion of the Eighth Circuit there affirming the district court was that even though there was an initial illegal search of the backpack because the officer should have known he did not have consent to go into that bag, he inevitably would have discovered what was in that bag because once he saw the paraphernalia on the console, he would have continued searching the interior of the car. He had probable cause at that point, and under the automobile exception, he had the right to go into every single closed container in the car and in the trunk and would have been able to find what he illegally found anyway. Can you do the site handy for Munoz? Munoz? Pardon me just a second. It's 590 F3 916. Okay, thank you. And the Eighth Circuit applies a more rigorous, I submit, inevitable discovery test. There's some split in the circuits on this where there has to be an alternative line of investigation going on. They apply that test, and they still found that the contraband and the gun in the knapsack inevitably would have been discovered. And how did they know that the officer would have searched that bag? Because after he searched the bag, he continued searching the interior of the car. So in our case, we know if things have... they don't stop. That's when they really go to town. Right, because they have probable cause. At that point, you have no more concern about it. But we have no evidence of that being standard operating procedure here. You're relying upon the fact that once they found something, they continued to look for more. That's correct. And, I mean, the videotape, which I haven't submitted, and I apologize for that. I didn't look at it in connection with preparing my brief. But it clearly shows a very thorough search going on, not just while they're looking through the bags, but even after they find the cocaine. Without consent, though, to search the vehicle by Guzman, you've got a real problem, right? No. Without consent. The case is over. Oh, the entire case is over. Because you've got an illegal search, ab initio of the heroin in the suitcase that pollutes. We've got fruit of the poisonous tree, everything that comes after. I agree. I agree. Everything would go out the window. But because she gave her consent first, you know, it's almost like a – And the fact that she gave her consent first, but then they didn't find the cocaine until after they found the heroin, though, right? That's correct. It's kind of an odd sequence of events. I don't know if it is. Let's look at it this way. They may have gone to the easiest thing to search, and what they considered the less intrusive.  I think, you know, other than the fact that – Easiest, less intrusive, plainly unconstitutional thing to search. Well, I don't know if it's plainly unconstitutional. I mean, I know they testified that they believe that they had his consent. I think this would be a different case if they believed her consent was sufficient to allow them to search his bag. That may be unconstitutional, but it wouldn't be plainly unreasonable. That may have been a mistake, but I think then we might be in good faith territory. In Munoz, it looks like the court relied upon the fact that the person who gave the consent was the renter of the automobile, even though she didn't – it wasn't her backpack. She rented the car, and this is a quick reading of the opinion. It may not be fair, and I apologize to you if it isn't. You may be right. No, that's correct, but that's exactly what we have here. She's the owner. And the court found that based upon her authority as the lessor of the car, she could give a consent that would extend to the backpack. No, no. The holding of Munoz – I mean, it's on all fours because her consent – and the Eighth Circuit found this. The district court only assumed in Munoz that the search of the backpack was illegal. The Eighth Circuit found that her consent did not extend to the backpack, and therefore the search of the backpack had been illegal, and that's why they had to reach a inevitable discovery conclusion. And here the driver of the car is the one who has the right to consent. She's the owner, not Mr. Kary and Soto. And so when she gives that consent before there's been any illegality and no one's contested that there was reasonable suspicion to prolong this traffic stop into a Terry stop, investigative detention, that's never been challenged. And there's no challenge in my adversary's brief, really, to the finding that pursuant to that consent, they would have found the cocaine. There's been no assertion that because they found the heroin first, they looked harder for the cocaine than they would have otherwise. But your argument basically is, in terms of inevitable discovery, it's what the law sets as parameters as to what could be done legally as opposed to what happened here in this case on the record because the record is void of so many facts. It's not void of facts. It's void of specific testimony about procedures. But we know what happened here, and even with the dog, I think, and I've explained in my brief why I don't think Judge Samanto had to go to what happened with the dog. There were two ways to make an inevitable discovery finding here, either the one that said, pursuant to her consent, you find the cocaine. You then have probable cause to search the entire vehicle. You search everything. You'd search the suitcase anyway. You'd find the heroin. That's one way. I think what Judge Samanto did, and I think the other way would be, if you held up the bags and said, whose are these? And Mr. Karyon Soto claimed the suitcase, and they said, well, may we search it? And he said no. Then you have testimony in the record that they would have gotten the dog and performed a sniff. And I can quote you that testimony too. Corporal Drummond testified that if either one had objected to the scope of the search or at any time had said, I don't want you to search that, I would have ceased the search and asked Sergeant Brown to run the canine. That's at page 188 of my appendix. So I think you have two different ways of getting to the inevitable discovery conclusion. Judge Samanto merged them, and I think that that was unnecessary. But the fact that they ran the dog afterwards shows you that the dog would have alerted. And the only reason they didn't, I think you could argue, is because they believed they had consent to search and were searching pursuant to that consent, and they found contraband. They ran the dog afterwards, not only confirmatory, but they testified it's just like a tool. And I don't know if they were looking for whether any drugs remained in the car that they hadn't found, but that's certainly a permissible reason to run the dog afterwards. I looked further through, and I'm not ignoring it, I'm listening to you as I read this, but it looks pretty clear what they relied upon. There was the general line of authority allowing for the search of the interior of a car, anything within the operator's reach, and the court has defined that as anything in the interior to give the police a bright line rule. Once they saw crack pipes on the dashboard, the backpack is in the car there, not in the trunk. And you may be right, and I've got to go back and look at that, the closed container doctrine might kick in, but that all of our cases in this circuit stemming from NICS, where the court was very, very clear, say that there has to be enough evidence in the record for the prosecution to establish that absent the illegality, the evidence would have been inevitably discovered. And in NICS they talk about how the grids had been laid out and how they're moving in the direction where the body was, and there was a culvert where the body was found, and the people searching, there were 200 of them, had been specifically instructed to pay attention to areas around culverts. Given that record, the court said, the body would have been inevitably found in the same condition that was found after the defendant responded to the Christian Burrill speech. But what I'm trying to search for in this record, what on this record would give that kind of certainty to us that this procedure would have been followed out, a procedure would have been followed absent any illegality? You're saying look to what they did. But unless there's testimony that says what we did in this case we do in every case, that doesn't help you. In the testimony here it's exactly the reverse. What they did here was not the normal procedure. Right, but the testimony that I quoted from Sergeant Brown was that at the time the suitcase was removed, they were searching the entire car and its contents. So in other words, he's telling you as a matter of fact at that time, and that's a finding that no one's challenged, that at the time that they're searching the suitcase, they're not just searching the suitcase, they're searching the whole car. And why are they searching the whole car? Just because of Guzman's consent? Exactly. It makes it perfectly lawful. So they get Guzman's consent to search the car, and you've got testimony that says we're searching the whole car, and they're not smart enough or they're too unethical to realize that they can't open a closed container in the car absent probable cause. They certainly don't recognize that her consent extends to his back. His suitcase. Okay, but even if they had recognized it and asked the question and he had said it. The point, I guess the point boils down to, and correct me if I misunderstand your position, but as I understand your argument, you're saying that the officer testified we were searching the whole car once we got consent, and it would be strange to conclude that people who are intending to search the whole car before they know there's any incriminating evidence are going to decide not to search the whole car after they find a kilo of cocaine under the seat. Exactly, and we know that because when they found it. The problem with that argument, though, is you could make the point just as easily that they would have gone into the bag, they would have opened up these closed containers in the trunk. That would have been the normal operating procedure. They could have said once we got her consent, we didn't give a damn whose bags they were. We found the cocaine. We've got $9,000 wrapped in the glove compartment. We find suitcases in the trunk. We're going to open them. We're not going to go through the nonsense of getting a warrant on the street there. We're going to open these suitcases to see what we're dealing with. Right, but if that's their policy, and if their policy is to open bags that they don't have consent to, that's just restating the illegality, and I just want to close with this point if I may because I see my red light is on. Well, that's my problem with your argument because you're saying look at what they did in this case, and that shows the normal procedure. No, well, that shows that they would have continued searching once they found contraband. We know they continued searching once they found heroin, so if they found the cocaine first, we know they would have continued searching and found the heroin. It works in both directions is my argument. Sure, sure, go ahead. I want to ask this question of the appellee, and that would be if this court found that the inedible discovery rule was misapplied as to the heroin, but there was consent to search and accept it legally, and the cocaine was found, what's the government's position in terms of harmless error beyond reasonable doubt as to this court opining that the cocaine would have to fall as well because presumably this whole case was structured around as far as the heroin is concerned and this defendant constructed possession, and assuming that it was, and given that that's a very difficult concept process anyway, how could this court conclude beyond reasonable doubt that the conviction of this defendant for heroin and cocaine wasn't affected by the heroin? Well, I don't know that the prosecution theory was that it was constructive. It was actual possession because it was in his luggage. He denied... No, no, that's the heroin, but I'm talking about the cocaine. If the heroin goes, he was found guilty according to the jury verdict sheet as to both. As to both. And if the heroin goes and the only thing that's left is the cocaine... Right. Now the question has to be did the admission of the heroin so taint the jury's consideration of count three and count one because the defendant is asking for remedy on both, that there would have to be a new trial? And the answer is no because this jury knew, right, you can tell by the pattern of their verdict, right, where there was physical evidence, right, which was for count one which was a conspiracy to distribute cocaine, and the cocaine that was found from the car is tangible evidence, is an overt act in furtherance of that conspiracy. They voted guilty. Well, but the problem is it's her car, isn't it? It's not his car, it's her car. That's correct, and he admitted... He didn't have to have constructed possession. But he admitted he had the keys, and that's he's the one who put the cocaine in there. That's his on-the-scene recorded admission that he's the one who put the cocaine in there, and he repeats that admission several times afterwards, including in proffers with the DEA. Either it was his or he was protecting the girl, I mean, one or the other. One or the other. But the jury, even the admission of the heroin was cumulative in this case because the verdict stands, there is overwhelming evidence of the cocaine possession and the conspiracy to distribute cocaine, and I don't see how on this record the defendant could contend that the admission of the heroin so obliterated the jury's ability to reason rationally that they would have voted guilty on count one, not guilty on count two, for which there were no drugs, there's no tangible evidence, only testimony, and then guilty on count three, where we have a special finding. I ask you to affirm the judgment. Thank you. Thank you, Mr. Zandos. Mr. Friedman. Very briefly. The court is obviously concerned about the fact that there is no testimony as to procedures in the case. It seems like there's a great case, the language by Judge Garth, in an opinion, I've used it a couple of times, where he refers to the court being asked to act like the circus hand who comes along behind the elephants with a shovel, and sometimes you get the feeling that if the prosecutor can't establish the record and try the case, that we're then handed a shovel saying, go on in there and clean this up. Well, there actually is testimony about procedure that I want to call to the court's attention. It's on pages 62 and 63 of my appendix, where Officer Brown, who's the canine handler, testifies as to what he typically does in these cases. First, he speaks with the occupants of the vehicle because he wants to know, basically he's addressing issues about the safety of his dog. He wants to try and figure out, based on answers to questions, whether or not there's anything in the vehicle that might hurt his dog if he brings the dog up to the vehicle for a search, because he has had some experiences where dogs have been injured by things that they discovered that were planted with the express purpose of hurting them. And then he testifies that after he's satisfied with those questions, then he asks some additional questions about drugs, if they have any drugs on them, if there are any drugs in the vehicle. And then, only then, he, well, let me read his words. And once I'm satisfied with those questions, I then retrieve the dog from the vehicle, from my vehicle, and then we usually walk up to the front of the suspect vehicle, at which time she's given a command to begin a sniff for narcotics, and we proceed around the vehicle. After we go around the vehicle, she either will alert or not alert. And if she alerts, she's rewarded and returned to the vehicle. So we do know about procedure. And what we know about procedure is that it wasn't followed here. Not only wasn't it followed here, but the exact opposite was done here. And I think it's important for the court to bear that in mind as it reviews this case. With respect to the issue of harmless error, I want to address that very briefly. This verdict was a split verdict. Let me go back to what you just said, because that's an interesting point. Is that standard operating procedure for a consent search? That sounds like SOP for a non-consent search. Because if you have consent, you don't need to go through the whole rigmarole of taking the dog around the car and see if it alerts. If you have consent, you just start searching. Again, I don't know how the Florence County Sheriff's Department in South Carolina conducts itself. This is what Officer Brown placed on the record at the suppression hearing. So you can't tell us whether that relates to a consent search or not? No, I can't. It's indeterminate? As far as I could tell, yes. All right, I'm sorry to interrupt. Go ahead. That's okay. That's fine. As far as harmless error goes, I think the issue is if you take the heroin out of the case, does it really make a difference? There was a split verdict in this case. My client was found guilty of two counts, found not guilty of one count. Clearly, the jury was troubled here. The jury had a problem with the evidence in this case. And the fact that there was a split verdict suggests strongly that they did have some issues with what they heard and saw during the trial. If you take the heroin out of this case, you completely change the complexion of the case. You change the mix of evidence that goes to the jury. But I thought the jury was specifically asked about cocaine, and it said yes to cocaine. It said yes to cocaine and heroin. We don't know. Right, but so let's say the heroin's wrong. I mean, the jury said yes to cocaine. What do you have for us that the jury wouldn't have reached that conclusion based upon Guzman's consent to search the vehicle and your client's admission that the cocaine was his? I don't think we could really answer that because once you take the heroin out of the case, the presentation of the case to the jury completely changes. We don't know what that trial would have looked like because the heroin wouldn't have been there. If the heroin's out of the case, he doesn't admit that the cocaine is his, and if the heroin's in the case, he does admit the cocaine's his? Well, as Your Honor pointed out when my colleague was up here arguing, he might have said that just to protect the girl. And that's something we've all seen that happen a lot of times. My sense is he did it to protect the girl. The problem is that gets him convicted. It gets him convicted. Because someone's getting convicted, either him or the girl, once they find the cocaine, and maybe he took the fall for her. Who knows? We don't know. He owned up to the cocaine, right? In a case where the heroin would not have been presented to the jury, it would have been presented, you know, that would have been a completely different case. The manner in which defense counsel would have presented his case to the jury had he won the suppression motion, at least that's the heroin, would have been very different. And I don't know that we know what that case would have looked like. I think that's speculative. Okay. Thank you, Counselor Murray. I'll take a minute on the advisement. I think about five minutes.